We ready? All right, please proceed. Thank you. Good morning, Gary Burcham. On behalf of appellant Mr. Rezapour, this case presents an interesting and novel issue concerning the supervised release conditions for defendants who invest in cryptocurrency. Mr. Rezapour was on three years of supervised release after having suffered a wire fraud and misbranding convictions. He was at a revocation hearing to address issues concerning late payments from a fine, reporting issues, a change in circumstance, and the probation department urged the district court to impose a condition that he only be allowed to have one wallet to maintain his cryptocurrency. And that's what we're challenging in this appeal. Can I ask you a question? The court's language limits that to personal transactions. What's your understanding of that? Does that mean that business transactions are not so limited? I haven't really thought about that. I think that because of the nature of his business, I think they're sort of intertwined. He's an entrepreneur, a businessman, and so whether it's his own personal business or his business, I think those are kind of one and the same for this gentleman. Not for everybody, but for this gentleman. So you would concede that all of his crypto transactions would have to be done through the one wallet? I believe so, yes. Okay. Counsel, I just want to be clear about one thing. So the only thing that is being challenged is the one wallet condition. It's not the language regarding all virtual currency transactions along with any virtual currency shall be disclosed to the probation officer upon request. You're not challenging that? Correct, Your Honor. You're not challenging the defendant shall not obtain or open any virtual currency wallets accounts without any prior approval of the probation office? Correct. That's correct. And just factually, so there was a fine dueing of $12,500 and there's sort of back and forth between the defendant and the court indicating that he had wanted and was intending to pay the full fine. Has he paid the full fine? Yes, he has. So what is left of this case? What is left of this case is the supervision that's 24 months which was re-imposed by the district court. And the reason why I'm not challenging those other elements is because it doesn't have the danger of loss to Mr. Razifor. That's the issue. The wallet is where the keys to the cryptocurrency assets are held. Cold wallet, either a USB or a piece of paper or a hot wallet which is linked to the internet. And they both have pluses and minuses in terms of security, but what they both have in common is the possibility of loss, of substantial loss if the wallet is compromised or cannot be opened. And so that's the issue with respect to this one wallet requirement. Counsel, you don't contest that the one wallet condition doesn't limit the number of cryptocurrencies or the amounts that your client can hold. It just imposes a restriction on the quote-unquote place where they all can be held. Exactly, Your Honor. Just like a brokerage account, a TV with different companies, with a wallet you could buy various cryptocurrencies, Bitcoin, Ethereum, there's a whole bunch out there now. And that's something that Mr. Razifor could do. Is there any harm to your client other than the harm that you just mentioned, which is, and I apologize if I use the wrong technical terms here, but if he loses or misplaces the key to the wallet, he loses everything in that wallet, whereas if he had 5 or 10 or 20 wallets losing a key would only cost him whatever was in the wallet that went with the key. Do I have that right? You do, Your Honor. I don't think anyone would ever need 5 or 10 or 20 wallets, but I think what's common for traders in cryptocurrency is to have a hot wallet, which is the actively traded assets on a platform like a Coinbase or something like that, and those are the ones that the person is going to actively use. Those are more at risk because it's an online linked account, and so fraud and those sorts of things could become issues for a hot wallet. And then a person might hold a majority of their assets in a cold wallet, which is not linked to the Internet and has, I think, better security overall. So that I'm clear about this, is it your position that if there had been a limitation of two wallets, one will call the hot wallet, the other the cold wallet, that would not be an impermissible limitation in your view? I agree. I think the language should have been more than one wallet is allowed. I mean, the judge could certainly put a limit on how many wallets, but the order that limits to one wallet is the issue here. But if he had said two wallets, one hot, one cold, we would not be here today. I'm not sure you need to distinguish between hot and cold, but if the judge had said two wallets, I would not have raised this issue on appeal. That's correct. But you would agree that the record that was before the district judge did not include this information, right? Your client just said, this would be financial suicide. I like to diversify. Please don't make me do this. Correct. And what we have to review is what was the record before the district judge and whether the district judge acted in abuse of his discretion or not. Correct. The record at that time. But the record at that time, cryptocurrency was something that was out there. It was being utilized by a lot of investors, and the issues with fraud have been out there as long as cryptocurrency really has been out there. So this isn't something that just developed in the period since this hearing. I think the fraud with respect to cryptocurrency is something that's fairly well known in our society, especially amongst... But, counsel, there were people who testified. Your client was representing himself. I think he had backup counsel, but he had the ability to make these points to the district judge by telling the court or by asking the witnesses, right? He could have done that. He did actually say... Go ahead. I'm sorry. Judge, you go ahead. I'm sorry. No, no, no. Go ahead. He did actually say, it's going to be suicide if you make me put all my eggs in one basket. So he actually said that exact phrase to the district court. He didn't put it in the terms I'm putting it in in this appeal. But I think that it's something that we can assume that could have been... Certainly was known. Certainly was known by the IRS, by the expert that testified. Certainly was known by the probation officer that testified. Mr. Razaport made the statement about not putting all of his eggs in one basket. He didn't frame it exactly like... Again, do we have anything in the record? I appreciate your oral representation that the fine has been paid in full. Not in the record, no. I think it would be helpful to have that in the record. But what is to preclude your client from going back to the district court and perhaps make some sort of argument that the situation has changed, he's paid his fine, and insofar as there was concern that the wallet needed to be supervised so that he could pay his fine, he's paid his fine, the conditions of supervised release should be modified to permit two wallets. Is he precluded from doing that? No, he's not, Your Honor. And with respect to the payment of the fine, I think the agreement was he was going to pay the balance within 30 days. I think if he didn't make that payment, he probably would have heard from the probation office again with another petition perhaps. But no, he could certainly go back to the district court, ask for a modification of the conditions. That is available to him. And you could make these additional points as to the reasons that he didn't make to the district judge if he wanted a move to reopen. And in addition, he could point out to the district judge anything about his then current financial situation which would make it more reasonable and the government could point out things that might make it less reasonable but your client's always free to seek modifications of the conditions of release. That is correct, Your Honor. Yes. And just on the legal principle, if the court concludes that limiting your client to a single wallet does in fact substantially curtail his ability to safely invest in virtual currencies, would that necessitate a finding that the condition is unreasonably restrictive of his liberty? It could either be based on that or it could be based on the first prong, which is not reasonably related to the goals of supervision, deterrence, rehabilitation, protecting the public. So we think it fails under both prongs. I think the stronger one is what Your Honor just said, which is the deprivation of liberty. But I think the court could find a failure of the first prong and stop right there and reverse based on that. And what is the liberty interest that's being deprived here? Clearly if he wanted to reduce all risk, he could invest in an FDIC insured bank, right? He could invest in assets that are regulated by the government. He could do you know, get private insurance on his crypto accounts. He could do two-factor authentication. There are a lot of things that he could do to minimize his risk. So what is  the liberty interest of a citizen to be able to, as you said Judge, securely hold his assets and invest his assets in a manner which he would like to do, which is legal, which is established, which is widespread. And I don't think just because he's a felon, he should be precluded from investing in this area of investments and doing so in a safe manner. Well, let me ask you. I don't think that the court below rested its decision solely on whether the fine was paid or not. I'm looking at the PSR, and there were significant deposits going into the Coinbase account, none of which Mr. Resipore had reported. He hadn't reported the account. He hadn't reported the virtual currency activity, the investment to the probation office. All the while he's saying, I'm not making any money. I won't have any profits. And if you look at his Bitcoin account, look at so many of his various virtual currency accounts, there was a lot of activity there that had not been reported to his supervised release probation officer. Your Honor, that is correct. So why wouldn't the One Wallet pursue or promote the efforts that the probation office is making on rehabilitation and making sure that there's no... His underlying offense had these dealings with China, and some of the Bitcoin payments were going to China. So there were a lot of things that gave the probation officer some pause, and they thought that to promote the rehabilitation, not just the fine payment, it would be helpful to have this restriction. That's correct. During the hearing, he explained a lot about where the money had come from. But he was supposed to do that reporting while he's on... I agree. That's the whole reason you're on supervised release. That's why you do the monthly supervision. That's why you have the requirements to give the accounting of any new income you're having. And why did it wait? Because a lot of this happened in 2019. He doesn't have his hearing until April of 2021. Right. So having these explanations coming out, what, a year and a half later, that's not what you're supposed to do when you're on supervised release, is it? I agree 100%. So how is that interest of rehabilitation and making sure that the transactions are lawful, how is that being promoted if someone is not being transparent for over a year and a half with his supervised release officer? Well, we have all the other orders, which is the full disclosure of the wallet, all the assets, all the transactions, which were not... But those conditions were in place before, and he still hadn't complied, correct? My answer would be, he has to disclose everything. He's on notice. He's been before the judge who's told him this personally. It shouldn't have taken that, but it did in this case. And for U.S. Probation to supervise one wallet versus two wallets is really no different. He has to disclose these wallets. If he doesn't, he's in violation and he comes back to court. Let me ask another question. So in his prior transactions, a lot of the transactions were being done by Mr. Bourgeois, who was his friend and his power of attorney. Is it your understanding that in these current supervised release conditions, no friend or power of attorney can do any virtual transactions on Mr. Rizaport's behalf? That is what I understand, yes. A little bit over time, if I could maybe have a little bit for rebuttal, I'd appreciate that. One question. Since the initiation of this appeal, and as the parties note, and as the probation officer noted, this is such a developing area of the law, cryptocurrency-based supervised release. We've done research on this, but have you determined whether there have been cases dealing with cryptocurrency-based supervised release conditions? That might be the subject of a 28-J letter. I have not. If I miss one, I'll go back and look, but I have not. Perhaps I need to research further, but I have not found one that was worthy of a 28-J. All right. Judge Bennett, do you have any further questions? Otherwise, Mr. Berksham is reserved three minutes. We'll give you three minutes even though we've gone over. No further questions. Thank you, Judge. Good morning, and may it please the Court. Patrick Fitzgerald on behalf of the United States. The issue before this Court is whether the District Court abused its discretion, and that has to be determined on the record that was before the District Court. An important part of that record was that the District Court found, and the defendant admitted, that he had violated the terms of his supervised release. So the District Court, in determining what further restrictions or requirements would be necessary, quite appropriately should consider that here was a defendant who had... Mr. Fitzgerald, why not allow two wallets? Your Honor, the probation officer and the cybercrimes probation officer explain that it is more difficult for them to monitor a defendant with two wallets or multiple wallets than with one wallet. So particularly since here was a defendant who had violated the terms of his supervised release, had raised red flags, including with cryptocurrency transactions, they believe that it was reasonably necessary to effectively monitor him to limit him to one wallet. Wasn't the testimony by the probation officer, as you note, referencing multiple wallets? The question of two wallets, which I know means more than one, was not specifically presented to the judge. Well, Your Honor, I think in the context of what was argued, there was a difference between one and more than one, and the probation office was quite clear and explicit that, of course, what they wanted was one, and they believed having just one was necessary for effective monitoring and fairly balanced their need to monitor the defendant's activity with the defendant's wish. He puts it as a cryptocurrency investor. One might say, apparently, what he wanted to do, a day trader. But in any event, they would allow that activity to go forward, but doing it in a way where they could have the necessary assurance that he was acting properly, which went to the goals that are in 3583 D1, namely deterrence, rehabilitation, and protecting the public. What is the basis for even considering ease of supervision or convenience to the probation department or probation officer doing the supervision? Well, Your Honor, the defense used the word convenience, but again, I think based on the record that was before the district court, it could reasonably determine that what was necessary for the effective monitoring and making sure that untoward transactions or other issues occurred. And in fact, on E-75, the district court came to the heart of the matter and asked the probation office, so if he is limited to one virtual currency wallet, does that make it easier for probation to sort of monitor transactions as opposed to an unlimited number of wallets? And the answer was, that is true, Your Honor. So, returning to the special condition, if the court, if we concluded that the special condition in essence prohibits the defendant from safely investing in cryptocurrency, would such a prohibition be unreasonably restrictive of his liberty? Not on these circumstances, Your Honor, as of course this court has noted many times, under the right circumstances, it's not an abusive discretion to require far greater restrictions of a defendant not to engage in certain businesses at all, not to be in locations where there are any minors. As this court has said, there certainly can be many restrictions for someone on supervised release that would not be constitutional or appropriate for someone who was not on supervised release, and again, in this case, we have someone who's not only on supervised release, but someone who has violated the terms of his supervised release. Counsel, is there evidence in the record, either through the technical expert who testified, or otherwise, that putting a defendant to one wallet would make it less likely that he would commit future financial crimes? Is there any evidence of that in the record? Well, Your Honor, there was evidence that they believed there would be more effective monitoring, which... I understand that. Directly, that wasn't really in the record, because having more than one increases the possibilities of some sort of manipulation or what the probation office and IRS were concerned about possible structuring. It would be logical to say yes, but that part of it was really not stated quite as crisply as Your Honor has, and the district court really didn't make a finding on that. Isn't that more important here than the ease of monitoring by the probation department? I mean, that may not go to deprivation of liberty, and it may not go to abuse of discretion, but I would think that would have been a much cleaner way of doing this if the government actually believed that that was so, that is, that limiting the defendant to one will protect the public more than him having more than one. Your Honor, again, that was sort of alluded to, I guess, would be the best thing in the record, but it wasn't stated exactly as the argument unfolded, where the focus was on the ability to effectively monitor the defendant's activities and make sure that he was not structuring, you know, going to sites that were shady, which the IRS was concerned about and some of these other matters. Now, you speak quite a bit about United States v. Jeremiah, which upheld the district court's single bank account condition, and you draw the analogy, well, that was a single bank account. The defendant says, well, this is a different situation because a bank account is insured. These cryptocurrency accounts are not insured so that the defendant is at risk. How do you respond to that argument? Well, Your Honor, I think that was a sort of factor that the district court appropriately considered, and it was appropriate for the district court to have considered how to make that balance, and having done so, the issue now is whether that was an abuse of discretion, and again, given the various factors that existed in this case, including the violations of supervised release, that was certainly not an abuse of the district court's discretion. Does it matter, or how does it affect your analysis, if at all, that the defendant has paid full restitution, has paid his fine? You've heard the questions from Judge Koh about instances of other violations, or belief, maybe not of violations, but concerns about structuring and all that. How does that, the fact your analysis here? Your Honor, I think the parties and the district court received the representation of the defendant that he was going to pay his fine. I believe everyone assumed that better late than never. In fact, he was going to do that, and the focus of the argument was assuming he paid his fine, why do we need these restrictions, and in fact, that was what the district court asked. Well, if he's paid his fine, do we need all this? And the probation office came back with the reasons why they still wanted it. So, that he has paid his fine, I don't think for purposes of this record is particularly of moment. Of course, if the defendant thinks that now it's part of other changed circumstances, he can always seek to have the conditions modified between now and April, when the term of supervised release is over. So, the term of supervised release is over in April of 2023? That is correct, Your Honor. And if I might ask the same question I asked your brother with respect to 28J possibilities. Of course, we've done a lot of research. We're actually surprised that there aren't all that many cases on cryptocurrency conditions for supervised release. What have you unearthed? Your Honor, the last that we looked at this we didn't see anything. Well, certainly, of course, never say never, but I'm pretty certain there's nothing in the Ninth Circuit, but of course, if there's other authority that would be helpful to the court in the other circuits, we're not aware of it, but we can certainly take another look and provide that in a 28J letter. Can we go back to Jeremiah? You would concede that it's not exactly the same here, because there is more risk to the funds in this case than in Jeremiah. Yes, Your Honor, that's correct, but again, that is similar to whether or not, for example, somebody could be argued to not be at a playground or an elementary school or whatever. There can be differences, and whether those differences are significant really is largely for the district court to determine in its discretion. Okay, Judge Bennett, do you have any more questions for the government? I don't. Thank you, Judge Koch. Thank you, Your Honor. Mr. Burcham, you'll have three minutes. The ER-75 where the district court talks about how it's easier, more efficient for probation, the judge talks about an unlimited number of wallets. We're certainly not asking for an unlimited number of wallets in this case. We're just asking for more than one wallet, and if the judge had said two wallets, then again, I would not be raising this issue on appeal. Jeremiah, the court specifically held in that case that it found just a de minimis effect on Mr. Jeremiah's liberty in that case. Can I ask you a question? If you look at ER-80, so they say, they talk about the IRS having a new federal law where cryptocurrency needs to be reported for tax purposes. The testimony is, Mr. Rezepor's history of not being transparent with us, again, this is just another way for the probation office to monitor compliance and that Mr. Rezepor is living a law-abiding life, ultimately to ensure he is successful on supervision and is able to rehabilitate into the community successfully. So there was some evidence in the record that there was a motivation for this condition that was trying to monitor for the purpose of making sure that there was compliance with the law and not just ease of supervision, right? Correct, Your Honor, that's in there. The district court considered that, and I would just go back to my point that one wallet and two wallets, they can supervise equally well. I mean, he has to disclose both wallets if that's the rule, and the probation officer just looks in two places instead of one. It's not a big deal, and again, it safeguards those assets from a total wipeout if something happens to that single wallet. With respect to Judge Bennett's good point about, you know, could he go back to district court and just make this request for a modification? Yes. But I think, as you noted, there's just not a lot of case law out on supervision of people in cryptocurrency. I think the district courts here and probably throughout the country could use some guidance in terms of how the conditions should be structured. Is a single wallet limitation onerous and overly burdensome and dangerous? Although in that regard, counsel, each case is going to turn in large part on the defendant's criminal record, what the defendant did. It's one thing if the defendant was convicted of a felonious assault. It's another thing if the defendant has a long history of fraud crimes. So I'm not sure that when you're looking at the abuse of discretion, one size fits all in terms of providing material guidance to future district courts on this issue. Judge, I totally agree. Each case is different. Each case has different facts. But I think the district courts across the country could really use some thoughts from this panel in terms of the effect of a single wallet on the 3583 analysis. The relation to rehabilitation and deterrence and protecting the public, and then also the liberty interest of the defendant. I think that could be useful, even though each case has its own facts. Judge Bennett, do you have any further questions for Mr. Burcham? No, thank you, Judge. Alright, thank you very much. Thank you for the very helpful arguments. This case is submitted.
judges: BENNETT, KOH, Katzmann